UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| SARAH LYNN MENZ, | )<br>) |
| Plaintiff, | ) Case No. 1:13-cv-497<br>) |
| v. | ) Honorable Robert J. Jonker<br>) |
| COMMISSIONER OF<br>SOCIAL SECURITY, | )<br>)<br>) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On March 18, 2010, plaintiff filed her application for benefits[1] alleging a December 14, 2009 onset of disability. (A.R. 173-74). Her claim was denied on initial review. On March 21, 2012, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 43-106). On April 27, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 26-37). On March 12, 2013, the Appeals Council denied review (A.R. 6-8), and the ALJ's decision became the Commissioner's final decision.

---

[1] March 18, 2010, is a protective filing date. "Protective filing date" is the term used for the first time an individual contacts the Social Security Administration about filing for benefits. *See* http:// www.ssa.gov/glossary.htm (last visited Nov. 19, 2014). A protective filing date allows an individual to have an earlier application date than the date the signed application is actually filed. *Id.*

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ violated the treating physician rule; and

2. The ALJ failed to properly evaluate plaintiff's credibility.

(Plf. Brief at 12, 19, docket # 12). I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court

interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on December 14, 2009, through the date of the ALJ's decision. (A.R. 28). Plaintiff had not engaged in substantial gainful activity after December 14, 2009. (A.R. 28). Plaintiff had the following severe impairments: "depression, sleep disorder, low back pain, degenerative disc disease, [and] connective tissue disease." (A.R. 28). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 28). The ALJ found that plaintiff retained the following residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following: She is limited to simple, unskilled work and would not be able to handle any fast-paced work or jobs with production quotas. She can stand/walk a total of 2 hours in an 8-hour workday; sit for a total of up to 6 hours out of an 8-hour workday; she cannot climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and occasionally balance,

> stoop, kneel, crouch and crawl. She must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. She is limited to occasional contact with the general public, coworkers, and supervisors.

(A.R. 30). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 30-35). The ALJ found that plaintiff was not able to perform any past relevant work. (A.R. 35). Plaintiff was 39-years-old as of her alleged onset of disability and 41-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for benefits she was classified as a younger individual. (A.R. 35). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 36). The ALJ found that the transferability of job skills was not material to a disability determination. (A.R. 36). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 16,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 86-89). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 36-37).

**1.**

Plaintiff argues that the ALJ violated the treating physician rule in the weight he gave to the opinions of Mark Goetting, M.D., and Psychologist Morry Edwards. (Plf. Brief at 12-19). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511

(6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See*

---

[2]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 404.1527(d)(3).

*Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even in circumstances in which a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

A.  <u>Psychologist Edwards</u>

Plaintiff has no history of hospitalization for any mental impairment.[3] (A.R. 32). On February 8, 2012, Psychologist Edwards sent a "narrative summary" to plaintiff's attorney describing his treatment of plaintiff (A.R. 831-32) and completed a RFC questionnaire (A.R. 833-40). Edwards stated the he met with plaintiff on six occasions between January 31, 2011, and January 30, 2012.[4] (A.R. 33, 831-32). Edwards offered a diagnosis of dysthymia, generalized anxiety disorder, rule out bi-polar disorder, depression, obsessive-compulsive disorder, and adjustment disorder. He gave plaintiff a current GAF score of 60 and indicated that her highest GAF was 70. (A.R. 831). Edwards indicated that plaintiff met with Farhan Jawed, M.D., for five appointments "between 03/22/11 and 06/16/12." (A.R. 832). Edwards further represented that on February 7, 2012, plaintiff met with Kevin Kunzer, M.D. All of the restrictions that Psychologist Edwards suggested in his RFC questionnaire responses (A.R. 833-40) were based on his narrative summary. None of the underlying treatment records from Edwards and others at Neuropsychology Associates were filed in support of plaintiff's claim for DIB benefits. Plaintiff could not withhold those treatment records and then claim entitlement to the benefit of the treating physician rule with regard to any opinions expressed by Psychologist Edwards or his associates. *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213-14 (6th Cir. 1986); *see also Weeks v.*

---

[3]Plaintiff did receive psychiatric treatment from Katherine Walden, M.D., around the date of her alleged onset of disability. (A.R. 340-41, 397, 760-61). No records from Psychiatrist Walden were filed in support of plaintiff's claim for DIB benefits. However, records from other sources, including Psychiatrist Brian Mickey, M.D., Ph.D., at the University of Michigan, indicate that plaintiff was struggling with her mother's death in August 2009, the prospect of returning from family medical leave to a very demanding job that she did not enjoy, providing care for her young child, and significant financial stress stemming from her excessive spending, gambling, and eventual bankruptcy. (A.R. 340-41, 387, 394, 396-97, 408, 436-37, 724-25, 761-63).

[4]On March 21, 2012, plaintiff testified that she was no longer seeing Psychologist Edwards. (A.R. 101).

*Shalala*, No. 94-5948, 1995 WL 521156, at * 3 (6th Cir. Sept. 1, 1995).  The ALJ considered the RFC questionnaire responses suppled by Psychologist Edwards and found that the opinions he offered were entitled to little weight:[5]

> Dr. Edwards completed a mental questionnaire in February 2012.  Dr. Edwards indicated irregular visits with the claimant and a current GAF score of 60, with her lowest GAF the past year 55.  Dr. Edwards opined that the claimant is markedly limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, work in coordination or proximity to others, complete a normal workweek, accept instructions and respond appropriately to criticism, and set realistic goals or make plans independently.  Dr. Edwards further opined that the claimant would be absent from work two or three times a month (Ex. 23F).  The undersigned accords limited weight to this opinion, as it is rather inconsistent.  Dr. Edwards opined that the claimant was markedly limited in several areas and yet he stated that the claimant's GAF score was 60, denoting moderate symptoms.  Furthermore, the claimant testified that she no longer sees Dr. Edwards.

(A.R. 34).  I find no error in the weight the ALJ determined was appropriate for Psychologist Edwards's opinions.

        B.        <u>Dr. Goetting</u>

Plaintiff claimed a December 14, 2009, onset of disability.  She testified that she had an associate's degree and a diploma of nursing from Bronson School of Nursing.  (A.R. 51, 56).  Her most recent job had been as a clinical coordinator at Advanced Vascular Surgery.  (A.R. 52, 275).  She testified that she went on family medical leave to help provide care for her mother.  (A.R. 59).  She returned to work for a brief period.  She was unhappy with her job and indicated that "a lot" of her depression was job-related.  She noted that it was difficult to manage her demanding job and take care of her young child at home.  She stated that her outlets included increased shopping and

---

[5]On the present record, the ALJ could have elected to give no weight to Edwards's opinion without committing error.  His narrative was not a contemporaneous treatment record.  The absence of treatment records left his questionnaire responses as a series of conclusions without underlying evidentiary support.  *See Buxton*, 246 F.3d at 773; *see also Alt v. Commissioner*, 1:13-cv-794, 2014 WL 5621431, at * 7 n.7 (W.D. Mich. Nov. 7, 2014).

going gambling once in a while with her husband. She knew that she was spending more money than she should. (A.R. 408).

On June 30, 2008, plaintiff underwent a sleep study at Borgess Sleep Disorders Center performed by Thomas Abraham, M.D. Dr. Abraham found that plaintiff did not have sleep apnea. Her overall sleep efficiency was normal and her sleep architecture was relatively normal with slightly reduced REM sleep. (A.R. 616).

On August 28, 2008, Yon Y. Graham, M.D., referred plaintiff to Dr. Goetting at Sleep Health. Dr. Graham noted that plaintiff's sleep study had been unremarkable, but expressed concern that plaintiff might have narcolepsy. (A.R. 618). Plaintiff began seeing Dr. Goetting on October 4, 2008. (A.R. 611-15). Plaintiff's main complaints were "falling asleep while driving" and "significant daytime sleepiness." (A.R. 611). On November 26, 2008, Dr. Goetting conducted a sleep study. It indicated that plaintiff did not have sleep apnea. This study indicated increased REM sleep content, which Dr. Goetting characterized as "a bit suggestive of narcolepsy." (A.R. 609). Dr. Goetting stated that the results of the polysomnogram as "essentially unremarkable." (A.R. 575). He offered a diagnosis of polysymptomatic idiopathic hypersomnia based on the result of plaintiff's MSLT test:[6] "The MSLT showed severe pathological sleepiness. There are two things that complicated this portion of the test. The first is that she took Trazodone the night before, which seems to be a communication error. Secondly, she had a migraine that began between the first and second nap. Nonetheless, the findings are confirmatory with polysymptomatic idiopathic hypersomnia." (A.R. 575).

---

[6]Multiple Sleep Latency Test (MSLT) is a test used to see how quickly you fall asleep in quiet situations during the day. *See Woodcock v. Astrue*, No. 4:11-cv-700, 2012 WL 4087011, at * 3 n.15 (M.D. Pa. Sept. 17, 2012).

On January 2, 2009, plaintiff reported that a brief trial of cranial electrotherapy stimulation did not seem helpful and it was discontinued. Plaintiff reported that Vyvanse "d[id] keep her safe for driving." (A.R. 440). She stated that she was "still not cognitively where she should be" and asserted that she was forgetful and inattentive. Dr. Goetting's responded to these complaints by prescribing supplemental Adderall. (A.R. 440-41).

On April 2, 2009, Dr. Goetting stated: "She is being treated with Vyvanse 50 mg in the morning, as well as Adderall 30 mg twice a day. Her alertness is substantially improved. She can drive without feeling drowsy. She has had difficulty with sleep initiation. Also she has had some headaches and elevation of her blood pressure. She has decreased her caffeine intake. Her Epworth Sleepiness Scale Score is normal at 8." (A.R. 531-32). On July 10, 2009, plaintiff reported that she was "doing better on Digoxin" and she found that it gave her a smoother boost in alertness and fewer headaches. Lunesta was "working well for her sleep initiation and maintenance problem." Plaintiff was "using acupuncture to improve issues related to stress and depression" and she was seeing a counselor with regard to dealing with her mother's illness. (A.R. 512). On October 17, 2009, Dr. Goetting noted that the MRI of plaintiff's brain was "unremarkable." (A.R. 421).

On January 29, 2010, plaintiff returned to Dr. Goetting and he made the following observations: "Presently she is using Desoxyn 15 mg twice a day. That is fairly well tolerated but doesn't seem to be as effective as Vyvanse. She would like to switch back to Vyvanse. It has not provoked problems with headaches that she has had with her other medications plus has not caused the irritability. She also uses Lunesta 3 mg at bedtime for sleep maintenance. She has not had any side effects from that." (A.R. 455). "She reports that she sleeps about 10-12 hours out of the day. Her Epworth Sleepiness Scale score is elevated at 13. She would like to try Xanax again." (A.R.

455). Dr. Goetting switched plaintiff's medication to Vyvanse and started plaintiff on Xyrem. (A.R. 455). On August 15, 2010, Goetting completed a RFC questionnaire. (A.R. 638-42). He indicated that he had not examined plaintiff at any time since January 29, 2010.[7] (A.R. 638). Dr. Goetting suggested that plaintiff should avoid work involving climbing and heights, power machines, moving machinery or other hazardous conditions. (A.R. 640). He offered his opinion that plaintiff's RFC included serious limitations in understanding, remembering and carrying out simple instructions, maintaining attention for two hour segments, being punctual within customary tolerances, sustaining an ordinary routine without supervision, performing at a constant pace, dealing with work stresses, traveling to unfamiliar places, and using public transportation. (A.R. 641). In addition, he asserted that plaintiff would likely be absent from work more than three times per month. (A.R. 641). The ALJ carefully considered Dr. Goetting's opinions regarding plaintiff's RFC and incorporated significant restrictions suggested by Goetting in his factual finding regarding plaintiff's RFC:

> Dr. Goetting completed a sleep disorder questionnaire indicating that the claimant is diagnosed with idiopathic hypersomnia, chronic insomnia and migraines. Dr. Goetting opined that the claimant should avoid work involving climbing, heights, power machines, moving machinery, and hazardous conditions, and operating a motor vehicle. Dr. Goetting

---

[7]On March 21, 2012, plaintiff testified that she sees Physician's Assistant Doug Diemer at Sleep Health. (A.R. 101). On December 13, 2010, plaintiff reported to Mr. Diemer that her medications did not get her through the day. She stated that her symptoms were fairly well controlled before 2 p.m., but in the afternoon she felt too tired to accomplish anything. She stated that she "typically sleeps straight through from night until morning. She will sleep 10 to 14 hours. She does feel rested when she wakes up in the morning." (A.R. 777). Plaintiff stated that she did not experience any side effects from medication. She stated that she typically took naps in the afternoon from anywhere from 1 to 3 hours, and stated that her naps were "typically not refreshing." Physician's Assistant Diemer increased plaintiff's dose of Seroquel. (A.R. 777-78). On January 17, 2011, Mr. Diemer noted that plaintiff was "currently treating her insomnia with Seroquel and has no problems initiating or maintaining sleep." (A.R. 781). Diemer noted that plaintiff appeared healthy, did not look sleepy and her appearance was normal. Plaintiff was alert, oriented and cooperative. She had no short term memory loss and good concentration. She did not appear depressed, anxious, or irritable. (A.R. 782).

> further opined that the claimant has several nonexertional limitations and is not able to work at all. It was noted that the Claimant's symptoms and limitations applied with an onset in her teens and that stimulants worsen her panic disorder (Ex 12F). The undersigned accords weight to this opinion as certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision, such as the postural limitations. The nonexertional limitations, statement that the claimant is unable to work, and the indication that the claimant's impairment began in her teens is not supported by the evidence, given the claimant's past work history and her testimony that she has had fatigue/insomnia for many years and self-medicated using caffeine. As indicated above, statements whether or not the claimant is able to work is an issue reserved for the Commissioner.

(A.R. 34). Goetting's predictions of how often plaintiff would likely have been absent if she had been working were conjecture, not medical opinions. *See Murray v. Commissioner*, 1:10-cv-297, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Further, the issues of disability and RFC are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(3); *see Allen v. Commissioner*, 561 F.3d at 652; *see also Courter v. Commissioner*, 479 F. App'x 713, 722 (6th Cir. 2012). Here, the ALJ gave a more than adequate explanation of his consideration of the RFC questionnaire at issue. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding that plaintiff retained the RFC for a limited range of light work which was "simple, unskilled work," not involving exposure to workplace hazards such as unprotected heights and dangerous moving machinery, which excluded "fast-paced jobs with production quotas" and involved only "occasional contact with the general public, coworkers and supervisors" (A.R. 30), is supported by more than substantial evidence. I find no basis for disturbing the Commissioner's decision.

**2.**

Plaintiff argues that the ALJ "failed to properly evaluate" her credibility. (Plf. Brief at 19-20). Credibility determinations concerning a claimant's subjective complaints are uniquely within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.' "). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff argues that the ALJ failed to "properly evaluate her credibility" because he noted that objective tests results did not support plaintiff's allegations of disabling pain. On appeal,

plaintiff argues that her claim is "primarily related to her sleep-related impairments and psychiatric diagnosis," and that therefore, "the fact that the ALJ believed [plaintiff's] MRI findings of the spine were insufficient to support a finding of disability is irrelevant." (Plf. Brief at 20). Plaintiff's appellate argument cannot be reconciled with her argument at the administrative level that she had a disorder of the spine that met or equaled the requirements of a listed impairment. (A.R. 101-02). The ALJ's observation that the objective evidence undermined any claim of disabling pain was entirely appropriate and the ALJ's factual finding is supported by more than substantial evidence. Next, plaintiff attacks the ALJ's credibility findings on the ground that he considered her daily activities. (Plf. Brief at 20). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Heston*, 245 F.3d at 534. The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: November 24, 2014  /s/ Phillip J. Green
United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).